UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ALEXANDER KATES,

                              Petitioner,                 DECISION AND ORDER

-vs-                                                      19-CV-6647 (CJS)

SUPERINTENDENT OF THE ATTICA
CORRECTIONAL FACILITY, and the
STATE OF NEW YORK,

                              Respondents.

_____

## I. INTRODUCTION

This matter is before the Court on Petitioner Alexander Kates's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he asks the Court to vacate the judgment of the Monroe County (New York) Court convicting him upon his plea of guilty of kidnapping in the second degree. Pet., 63, Sept. 3, 2019, ECF No. 1. For the reasons set forth below, Kates's application [ECF No. 1] is denied.

## II. BACKGROUND

The reader is presumed to be familiar with the facts and procedural history of this action. In September 2017, Kates was arraigned in Monroe County Court on a grand jury indictment charging him with one count of kidnapping in the first degree, two counts of kidnapping in the second degree, one count of criminal use of a firearm, and multiple counts of burglary. 09/17/2014 Tr., 2, May 11, 2020, ECF No. 21—7.

Through pretrial motion practice, Kates's appointed counsel was able to secure dismissal of the kidnapping in the first degree charge, and the suppression of evidence gathered in the search of two separate of Kates's addresses, a phone found at one of the premises, and in the

1

search and monitoring of his car. 02/24/2015 Tr., 9, May 11, 2020, ECF No. 21-11; 04/14/2015

Plea Tr., 2, May 11, 2020, ECF No. 21-14. Even so, Kates expressed dissatisfaction with his

counsel because he found his pretrial motions to be "somewhat inadequate," because he "don't

have any input in my defense," and because counsel was not preserving all of the issues that

Kates wanted to be preserved. 02/24/2015 Tr. at 3–10. When the trial court asked him to list the

specific issues that he wanted preserved, Kates indicated that he wasn't prepared to go through

the entire list but would submit a memorandum of law for the court's consideration. 02/24/2015

Tr. at 11. It is not clear from the record whether he ever did so.

Less than two months later, Kates was indicted by a second grand jury on the kidnapping

in the first degree charge, and the prosecution and Kates's trial counsel entered in to serious

negotiations regarding a plea agreement. 04/14/2015 Plea Tr. at 3. Kates initially rejected the

plea offer, which the prosecutor then put on the record as follows:

> That would have been a plea of guilty to Kidnapping in the Second Degree . . . with
> a sentence promise of 16 years [imprisonment] . . . and a 5 year period of post-
> release supervision. The execution of a Waiver of Appeal, the admission at the
> time of sentencing to being a second violent felony offender, as well as any
> appropriate orders of protection, and any restitution orders.

04/14/2015 Plea Tr. at 4–5. Kates's trial counsel then confirmed that he had originally received

an offer of 18 years imprisonment and "had a couple of conversations with" Kates about it, that

the prosecutor had reduced the promised term of imprisonment to 16 years that afternoon, and

that counsel "had further discussions with Mr. Kates about that, and yes, we are rejecting that

offer." 04/14/2015 Plea Tr. at 5.

After defense counsel indicated that Kates was rejecting the plea offer, the trial court held

a colloquy directly with Kates:

> THE COURT:  Mr. Kates, is that correct? You've had a chance to speak to [defense
> counsel] and it is your decision that you don't want to take advantage of that offer?

[KATES]: Yes.

THE COURT: All right. You understand, sir, I don't have any position one way or another whether you should take it or not, that's up to you and your attorney. I'm sure you discussed with [defense counsel] the range of sentences that you could be sentenced to if you're convicted of the charge or charges in the various indictments, including the fact that it's possible you could receive consecutive time on certain charges. You understand that?

[KATES]: We didn't discuss that portion.

THE COURT: Well, you understand that the kidnapping charges and the burglary charge of the Jewelry Lab could be sentenced consecutively, one after the other? So if you're convicted of Kidnapping in the First Degree, the sentence will be . . . 25 to life . . . . [m]aximum sentence. And then on the Burglary the maximum I believe would be seven years . . . . And those could be one on top of the other. Again, it doesn't affect me, it doesn't matter to me one way or another what you do, Mr. Kates, but you should understand the parameters of what is being offered to you. When you're offered 16 determinate it means you don't have to do life. It means you're eligible after six-sevenths of that 16 years to be placed on post-release supervision. Do you think you've had enough time to consider all those things?

[KATES]: Can I have three more minutes?

THE COURT: Sure, you can.

04/14/2015 Plea Tr. at 6–7.

When the hearing resumed, the prosecution indicated that it had had a further discussion with defense counsel, and that if Kates pled guilty, the prosecution would return evidence seized from Kates' home and his car, "to the extent that it is not needed for . . . [prosecution of the] remaining co-defendant . . . [and] to the extent the requested property is not considered contraband . . . as soon as appropriate." 04/14/2015 Plea Tr. at 8. Then, defense counsel stated that Kates would enter a plea to kidnapping in the second degree, and Kates affirmed. 04/14/2015 Plea Tr. at 8–9.

Once defense counsel stated that Kates was willing to accept the prosecution's plea offer, the trial court had a further colloquy with him. 04/14/2015 Plea Tr. at 8–9. In addition to satisfying

the court that he was old enough, was able to understand English, and was not under the influence of any intoxicants or medications, Kates also indicated that he had had sufficient time to discuss the plea with counsel, that he was satisfied with counsel's representation, and that he wished to accept the plea. 04/14/2015 Plea Tr. at 9–10. The plea colloquy therefore proceeded:

> THE COURT: Do you understand, Mr. Kates, you don't have to plead guilty, you have the right to a trial? We had one scheduled for you in May. By pleading guilty you're giving up your right to that trial, do you understand that?
>
> [KATES]: Yes.
>
> THE COURT: Pleading guilty is the same as if you went to trial and you were convicted by unanimous jury of this lesser charge of the Kidnapping in the Second Degree, do you understand that?
>
> [KATES]: Yes.
>
> THE COURT: By pleading guilty you're giving up your right to make the People prove their case against you beyond a reasonable doubt. Do you understand that?
>
> * * *
>
> [KATES]: What is reasonable doubt?
>
> THE COURT: - Reasonable doubt is something that the jury would be asked to consider. It's an actual doubt. A doubt that's not based on speculation or whim. It's not required that the People prove their case to a mathematical certainty or beyond all possible doubt, but it would have to be proven beyond a reasonable· doubt. As there's a full instruction on what that is that the jury would consider and if they found that that burden was satisfied, they would be directed to find you guilty. If they found that burden was not satisfied, they would be directed to find you not guilty. So you understand that by pleading guilty you're giving up your right to make them prove their case beyond a reasonable doubt?
>
> * * *
>
> [KATES]: Yes.
>
> THE COURT: Do you understand you're pleading guilty to a violent felony offense?
>
> [KATES]: Yes.
>
> THE COURT: Do you understand that if you're convicted again of another violent felony or another felony in New York State within 10 years of being released on

this charge, you'd have to serve a state prison sentence, do you understand that?

[KATES]: Yes.

THE COURT: Has anybody made any promises to you to get you to take this plea other than the sentence promise that's been placed on the record by the People and your attorney?

[KATES]: No.

THE COURT: Anybody threatened you or forced you in any way to take this plea?

[KATES]: I think so, a little bit.

THE COURT: Tell me how.

[KATES]: Well, I just feel that – I don't quite know how to word it. I just feel that not being severed from somebody who looks like they're guilty and by strengthening the prosecution's case it was at the expense of my defense.

THE COURT: I understand what you're saying. The issue that you have is that a decision that the Court made at this point, you don't have to agree with every decision that I've made. The issue is are you going to give up your right to trial and plead guilty, and that's a balance that you have to make. You have to decide whether you believe it's in your best interest, and if you're doing that of your own free will, I'll allow your plea. If you feel you're being coerced into it and you're only doing it to avoid something and you're really not guilty of anything, then I want you to have a trial and I want you to sit, listen to the proof. We'll all listen to it. We'll see what the jury says, then I'd be free to sentence you to whatever is appropriate.

* * *

THE COURT: I can't tell you what's going to be said, how it's going to be received: I can tell you you have a· right to a fair trial and I'll give you a fair trial. By pleading guilty you're giving up your right to that trial. The question now is has anybody forced you or threatened you to take a plea?

[KATES]: No, nobody in particular.

THE COURT: You just don't agree with all the decisions that are made?

[KATES]: I just don't see that being forced to trial with somebody who only in my opinion may look guilty, I just don't see about being forced to trial with them is fair. I don't see. Nothing fair about a trial like that.

THE COURT: Okay. Anything else?

[KATES]: No, that's the only issue I really have.

THE COURT: And given that, you're still willing to enter a plea, is that correct?

[KATES]: Yes.

* * *

THE COURT: That's correct, I did. Mr. Kates, you're charged with acting in concert with Mr. Pryor and based on my understanding of the facts and the limitation that I placed on the prosecution with respect to what evidence can be used against you and that the fact there are no statements or confessions that are being offered by the People that you or Mr. Pryor made against one another in any way I agree for People to deny your severance. While we're on the issue, it's something that you would normally have the right to appeal if you pled guilty, if you were convicted you could appeal that decision. My understanding, in order to take advantage of this offer you're being asked to waive your right to appeal or challenge the Court's rulings and decisions in this case, do you understand that?

[KATES]: Yes.

THE COURT: I'll talk to you more about that in a second, but as to your right to trial, giving up your right to trial, you're giving up your right to have [defense counsel] represent you at the trial, to confront the witnesses that are called against you, to cross-examine them, ask them questions. You're giving up your right to have him ask questions on your behalf and to choose not to and have the jury told it can' t hold that against you. Do you understand all those rights you'd be giving up by
pleading guilty and giving up your right to trial?

[KATES]: Yes.

THE COURT: Now, in addition to your right to trial, we're starting to discuss a separate set of rights that you would have. Everyone who's convicted of a crime, whether it's a misdemeanor or felony, whether they plead guilty or whether they're convicted. A jury after a trial, Mr. Kates, normally would have the right to challenge that conviction, to appeal it to a higher Court, or to have this Court reconsider some issues with respect to that, either before your sentence or after your sentence and you have the right to have an attorney represent you on those challenges. If you couldn't afford one, one would be appointed for you for those challenges. By accepting this plea, it's my understanding you're willing to give up this separate set of rights, all that it entails, in addition to giving up your right to trial. Basically what you're saying to the Court is you want to accept this sentence, you want to do your time, put it behind you and move on. You don't want to come back to Court, you don't want to challenge the way the police handle the case, DA, Grand Jury or the

Court in making its decisions, do you understand that?

* * *

[KATES]: I understand the waiver.

THE COURT: All right. If you're willing to give up that separate set of rights, you give up those rights, I'll ask you to sign the written waiver, Mr. Kates. For the record, I've been handed a one page document entitled Waiver of Appeal and Post-Conviction Challenges. Mr. Kates, this is your signature on the near bottom left-hand side, is that correct?

[KATES]: Yes.

THE COURT: You've had a chance to review this, you've had enough time to discuss this with [defense counsel]?

[KATES]: Yeah.

THE COURT: You understand what's included in it?

[KATES]: Yes.

THE COURT: Do you have any questions for the Court or for [defense counsel] about that?

[KATES]: No.

THE COURT: Has anybody made any promises to you to get you to sign this?

[KATES]: No.

THE COURT: Anybody threatened you or forced you in any way to sign this?

[KATES]: No.

THE COURT: Do you understand that this means you're giving up your right to challenge the severance decision? Do you understand that? That's part of the Court's decision, do you understand that?

[KATES]: Yes.

* * *

THE COURT: Well, is there anything that you need to ask me about what we've already talked about, your right to trial?

[KATES]: Being tried sitting next to someone who just, you know, their case doesn't seem so great, I'm just not fond of that.

THE COURT: I understand that and we just talked about your right to trial. You're giving up your right to trial no matter what happens to the other person. You're giving up your right to challenge your rights in this matter including severance, and you just told me that's what you wanted to do. I'm not trying to make you do something that you feel is wrong, you're railroaded for some reason. If you want to have a trial we'll bring in a jury. But if you want to take advantage of the offer that the People are making this is the process I need to go through with you and that's why I'm asking you these questions. So do you understand that?

[KATES]: Yes.

04/14/2015 Plea Tr. at 14–20.

Next, the trial court examined Kates about the factual basis of his plea of guilty. Kates admitted that on the morning of August 7, 2014, he held three individuals against their will bound and gagged in an apartment in Monroe County (New York); he was aware the individuals were bound and gagged; he did not have permission to be in the apartment; he had a gun; and he or his co-defendant who was also present in the apartment threatened the youngest of the three bound individuals with a gun to keep quiet and answer questions regarding a jewelry store. 04/14/2015 Plea Tr. at 21–25. Kates then pled guilty to one count of kidnapping in the second degree, and the court accepted his plea. 04/14/2015 Plea Tr. at 25–26.

At sentencing in June 2015, the prosecution presented a second felony information against Kates, and asked him to admit that he is the same individual convicted in 2011 of attempted criminal possession of a weapon, for which he was sentenced to two years of imprisonment and two years supervised release. 06/02/2015 Sentencing Tr., 3, May 11, 2020, ECF No. 21-15. Kates admitted the fact, and neither he nor his counsel challenged the legitimacy of the 2011 conviction. 06/02/2015 Sentencing Tr. at 4. The trial court then imposed a determinate sentence of 16 years' imprisonment followed by 5 years of supervised release on

the kidnapping charge. 06/02/2015 Sentencing Tr. at 9.

Despite his appeal waiver, Kates pursued several collateral attacks as well as a direct appeal of the judgment against him. First, Kates filed both a *pro se* motion to set aside his sentence under New York Criminal Procedure Law (NYCPL) § 440.20, and a *pro se* motion to vacate the judgment under NYCPL § 440.10. The trial court considered the motions together and denied them after finding that Kates's motion to set aside his sentence, as well as each of the arguments in his motion to vacate judgment, were without merit. State Record, Vol. 1 (SR1), 237–43, May 11, 2020, ECF No. 21-2. The trial court found, among other things, that Kates had failed to show that he received the ineffective assistance of counsel, either prior to his plea deal or throughout plea negotiations and Kates's acceptance of the plea offer. SR1 at 239–42. The trial court also found that Kates failed to show that his indictment or plea were tainted by prosecutorial misconduct or coerced by unfulfilled promises, respectively. SR1 at 238, 242.

The state appellate division granted Kates leave to consolidate his direct appeal of his conviction and sentence and of the trial court's denial of his § 440.10 motion. SR1 at 458–59. In his counseled brief, Kates raised several issues: (1) that his guilty plea was not knowing, intelligent and voluntary because the trial court failed to advise him that he would receive a 16 year determinate sentence with 5 years of post-release supervision; (2) that the search warrant for Kates's AT&T phone records should have been suppressed; (3) that the trial court abused its discretion in denying Kates a *Franks/Alfino* hearing; and (4) that Kates received the ineffective assistance of counsel when his trial counsel failed to investigate potentially exculpatory evidence, and the trial court failed to sufficiently inquire into the merits of Kates's original complaints about counsel. SR1 at 466–504. Kates also filed a series of *pro se* supplemental briefs in which he raised over fifty additional issues, including claims that the trial court lacked subject matter jurisdiction because of defective felony complaints, his appeal waiver was invalid,

he was arrested without probable cause, he received the ineffective assistance of counsel, and the trial court conducted an insufficient plea allocution. State Record, Volume 2, 1234, May 11, 2020, ECF No. 21-4.

The trial court's decisions on Kates's various motions, as well as the judgment against Kates, were affirmed on appeal. *People v. Kates*, 162 A.D.3d 1627 (N.Y. App. Div. June 15, 2018). First, the appellate division found that the trial court did have subject matter jurisdiction because the felony complaints were superseded by the indictment to which Kates pled guilty. *Kates*, 162 A.D.3d at 1628. Second, it found that Kates's "waiver of the right to appeal was knowing, intelligent, and voluntary," and concluded that "the valid waiver of the right to appeal forecloses" review of Kates's challenges to the trial court's suppression rulings and its inquiry into Kates's request for new counsel. *Kates*, 162 A.D.3d at 1628–29. Third, the appellate court found that Kates's plea was knowingly, voluntarily and intelligently entered because he was advised of the direct consequences of his plea during the proceedings. *Kates*, 162 A.D.3d at 1629. Further, the Court found that although Kates's "contention concerning the voluntariness of the plea survives his valid waiver of the right to appeal . . . [he] failed to preserve his contention for [appellate] review because he did not move to withdraw the plea . . . or otherwise object to the imposition of sentence." *Kates*, 162 A.D.3d at 1629–30. Lastly, the Court reviewed Kates's multiple claims of ineffective assistance of counsel and found that the trial court properly found that he received "meaningful representation," that his arguments indicated "simple disagreement with strategy and tactics," and that all of his claims were without merit. *Kates*, 162 A.D.3d at 1630–32. In October 2018, the New York Court of Appeals denied leave to appeal the appellate division's decision, and in January 2019 denied Kates's motion for reconsideration. *People v. Kates*, 113 N.E.3d 954 (N.Y. 2018); State Record, vol. 3 (SR3), 311, May 11, 2020, ECF No. 21-4.

Kates then sought *pro se* a writ of *coram nobis* from the appellate division, arguing that

his appellate counsel was ineffective. State Record, vol. 4 (SR4), 539–55, May 11, 2020, ECF No. 21-5. The appellate division denied Kates's motion in December 2018, and the New York Court of Appeals denied Kates leave to appeal. SR4 at 575, 585.

At around the same time, Kates also filed a second *pro se* § 440.10 motion to vacate the judgment against him in which he sought to withdraw his plea as unknowing and involuntary on the basis of the trial court's alleged failure to advise him of the direct consequences of his plea. SR3 at 313–20. He also asserted an ineffective assistance claim, argued that he was actually innocent, and challenged his conviction due to a "retroactive law change." SR3 at 320–31. In January 2019, Kates supplemented his § 440.10 motion with a motion under NYCPL § 440.20 to set aside his sentence on the grounds that the predicate felony conviction from 2011, which was used to enhance his sentence, was "constitutionally, jurisdictionally and statutorily infirm, defective and invalid . . . ." SR3 at 339. The state trial court considered Kates's § 440.10 and § 440.20 motions together, and denied them both. SR3 at 429–34. The state appellate division denied Kates leave to appeal the trial court's decision. SR4 at 538. Kates apparently then filed a *pro se* motion for "reconsideration, renewal, and reargument" in the state trial court, which was subsequently denied. Mot. to Stay, 9, Sept. 3, 2019, ECF No. 3. The appellate division denied Kates leave to appeal this decision, as well. Letter, Mar. 8, 2023, ECF No. 41.

On September 3, 2019, the Clerk of Court docketed the *pro se* application for habeas relief that is presently before the Court. On September 26, 2022, Kates supplemented his petition with the Court's leave to add an additional ineffective assistance of counsel claim. Supp. Pet., Sept. 26, 2022, ECF No. 35.

## III. STANDARD OF REVIEW

28 U.S.C. § 2254 provides that ". . . a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only

on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." The legal standards applicable to such a petition are well-settled.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas petitions must be filed within one year of the date on which the petitioner's state judgment became final, though the filing of certain state court collateral attacks on a judgment tolls the limitations period. 28 U.S.C. § 2244(d)(1)–(2). A judgment becomes final "after the denial of certiorari [by the U.S. Supreme Court] or the expiration of time for seeking certiorari." *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001).

For those petitions that are timely filed, 28 U.S.C. § 2254 requires federal courts to give deference to state courts' decisions. *See Chrysler v. Guiney*, 806 F.3d 104, 117 (2d Cir. 2015) (citing AEDPA, Pub. L. No. 104-132, 110 Stat. 1214).

"First, the exhaustion requirement ensures that state prisoners present their constitutional claims to the state courts in the first instance." *Jackson v. Conway*, 763 F.3d 115, 132 (2d Cir. 2014) (citing *Harrington v. Richter*, 562 U.S. 86, (2011)). This requirement, imposed by § 2254(b), is not satisfied unless the petitioner's federal claim has been "fairly presented" to the state courts. *Picard v. Connor*, 404 U.S. 270, 275 (1971). A claim may be "fairly presented" to the state courts if "the legal basis of the claim made in state court was the 'substantial equivalent' of the habeas claim." *Daye v. Attorney General of New York*, 696 F.2d 186, 192 (2d Cir. 1982) (quoting *Picard*, 404 U.S. at 278) (additional citations omitted). "This means, in essence, that in state court the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Cato v. Superintendent of Groveland Corr. Facility*, 463 F. Supp.2d 367, 371 (W.D.N.Y. 2006) (quoting *Daye*, 696 F.2d at 192).

Second, "[s]hould the state court reject a federal claim on procedural grounds, the

procedural default doctrine bars further federal review of the claim, subject to certain well-established exceptions." *Jackson*, 763 F.3d at 132 (citing *Wainwright v. Sykes*, 433 U.S. 72, 82–84 (1977)). The Supreme Court has held that the procedural default doctrine bars claims from habeas review if they were decided at the state level on adequate and independent procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729–33 (1991). *See also Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999) (federal habeas courts must defer to the "state's interest in enforcing its laws"). A ruling on an independent state law ground is adequate to support a judgment where the ruling is "firmly established and regularly followed" by the state courts. *Garcia*, 188 F.3d at 77 (quoting *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991)).

Lastly, federal courts considering claims that were decided by state courts on the merits must employ "a highly deferential standard for evaluating state-court rulings," and must give those state-court decisions "the benefit of the doubt." *Jones v. Murphy*, 694 F.3d 225, 234 (2d Cir. 2012) (quoting *Hardy v. Cross*, 565 U.S. 65, 66 (2011)). In such cases, a federal court may issue a writ of habeas corpus only when the state-court adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law," or that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(1)–(2).

A principle is "clearly established federal law" for § 2254 purposes when it is embodied in a Supreme Court holding framed at the appropriate level of generality. *Washington v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017) (quoting, *inter alia*, *Thaler v. Haynes*, 559 U.S. 43, 47 (2010)). A state court decision is "contrary to" such clearly established law when the state court either has arrived at a conclusion that is the opposite of the conclusion reached by the Supreme Court on a question of law, or has "decided a case differently than the Supreme Court has on a set of

materially indistinguishable facts." *Washington*, 876 F.3d at 403 (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). An "unreasonable application" of such clearly established law occurs when the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case such that "the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Washington*, 876 F.3d at 403 (citation omitted). Where a factual determination is at issue, the petitioner has the burden of showing by clear and convincing evidence that a state court's determination was incorrect. § 2254(e)(1).

## IV. DISCUSSION

Kates's *pro se* habeas application and amendments, together with the state record and transcripts, are voluminous. Kates identifies the following 17 grounds for relief:

1. Violation of his Fifth, Eighth, and Fourteenth Amendment rights by the prosecutor's negotiation of an "illusory and meaningless plea" that involved property the prosecutor had no authority or jurisdiction to bargain with. Pet. at 24–25.

2. Violation of his First, Fifth, Eighth, and Fourteenth Amendment rights when the state trial court "coerced" him into accepting the plea and predicate felon sentence enhancement. Pet. at 27–28.

3. Violation of his Fifth, Eighth, and Fourteenth Amendment rights by the trial court's failure to inform him of the direct consequences of his plea. Pet. at 29–30.

4. Violation of his Sixth and Fourteenth Amendment rights by the ineffective assistance of counsel when his trial counsel failed to investigate potentially exculpatory evidence. Pet. at 33.

5. Violation of his Sixth, Eighth, and Fourteenth Amendment rights when the trial court failed to make a proper inquiry into his complaints about trial counsel and his request for a substitute attorney. Pet. at 34.

6. Violation of his Fifth, Eighth, and Fourteenth Amendment rights by inducing his plea by fraud, and while he was under duress. Pet. at 34.

7. Violation of his Fifth, Eighth, and Fourteenth Amendment rights by indicting him on false evidence, and through prosecutorial misconduct. Pet. at 35.

8. Violation of his Eighth and Fourteenth Amendment rights by enforcing an invalid and unconstitutional appeal waiver that was unknowingly, unintelligently, and involuntarily entered into. Pet. at 35.

9. Violation of his Fifth, Eighth, and Fourteenth Amendment rights when he was prosecuted in a court that lacked jurisdiction and authority because Kates was arrested without probable cause and the criminal complaint was defective. Pet. at 36.

10. Violation of his Fourth, Fifth, and Fourteenth Amendment rights when we was arrested without reasonable or probable cause. Pet. at 36.

11. Violation of his Fourth, Fifth, and Fourteenth Amendment rights when we was convicted based on evidence that was obtained pursuant to an unconstitutional search and seizure. Pet. at 37.

12. Violation of his Eighth and Fourteenth Amendment rights when he was given a predicate felon sentence enhancement based on a 2011 conviction that was "constitutionally infirm." Pet. at 38.

13. Violation of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights when he was convicted and sentenced on a crime for which he is actually innocent. Pet. at 39.

14. Violation of his Fifth, Sixth, Eighth, and Fourteenth Amendment rights when the trial court failed to summon his co-defendant for a *Wade* hearing. Pet. at 39–40.

15. Violation of his Sixth and Fourteenth Amendment rights when received the ineffective assistance of appellate counsel for numerous errors. Pet. at 40.

16. Violation of his Eighth and Fourteenth Amendment rights when there were due process violations regarding his appeals and collateral attacks in state court when they "were not resolved in a way reasona[bly] related to the merit of those motions, challenges, or appeals." Pet. at 40–41

17. Violation of his Sixth and Fourteenth Amendment rights when he received the ineffective assistance of trial counsel for negotiating for the return of property that had to be returned anyway. Supp. Pet. at 3–4.

After a thorough review of Kates's papers and the state court record and transcripts, the Court finds in accordance with Rule 8 of the Rules Governing Section 2254 Cases that an evidentiary hearing is not necessary to address Kates's claims. *See also* 28 U.S.C. § 2254(e)(2). Further, the Court agrees with Respondent that Kates's petition is without merit. For ease of discussion, the Court will address Kates's arguments out of order.

A. Kates's guilty plea was knowing, voluntary and intelligent.

The question of an effective waiver of federal constitutional rights, even in a state proceeding, is governed by federal standards. *Douglas v. Alabama*, 380 U.S. 415, 422. Therefore, at the outset, the Court must address Kates's arguments regarding the validity of his guilty plea. As indicated above, Kates makes several arguments in this regard. He maintains that his plea was invalid because the prosecutor negotiated an "illusory and meaningless plea," that the trial court "coerced" him into accepting the plea, that the trial court failed to inform him of the direct consequences of his plea, that his plea was induced by "fraud and duress," and generally that his plea was entered unknowingly, unintelligently, and involuntarily.

The Court agrees with Respondent that Kates's claim is without merit.

*Procedural Default Doctrine*

As explained above, the procedural default doctrine provides that a petitioner's federal claims may be procedurally barred from habeas review if they were decided at the state level on "adequate and independent" grounds. *See Coleman*, 501 U.S. at 729–33. This doctrine is based on the comity and respect that federal courts must give to state judgments. *See House v. Bell*, 547 U.S. 518, 536 (2006). Its purpose is to maintain the delicate balance of federalism by retaining a state's rights to enforce its laws and to maintain its judicial procedures as it sees fit. *Coleman* at 730–31.

A procedural bar is "adequate" if it is "firmly established and regularly followed by the state in question." *Garcia*, 188 F.3d at 77 (citing *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991)). It is "independent" if the state court actually relied on the procedural bar as an independent basis for its disposition of the case, and "clearly and expressly" stated that the bar was the basis for the court's judgment. *Harris v. Reed*, 489 U.S. 255, 261–63 (1989). Once it is determined that a

claim is procedurally barred under state rules, a federal court may still review such a claim on its merits if the petitioner can demonstrate both cause for the default and prejudice results therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Coleman*, 501 U.S. at 750. A miscarriage of justice is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

In the present case, the state appellate division found that Kates "failed to preserve [the issue of the voluntariness of his plea because he did not move to withdraw the plea . . . or otherwise object to the imposition of the sentence" prior to the trial court's final judgment. *Kates*, 162 A.D.3d at 1629–30. As the appellate division's multiple references show, the "preservation doctrine" is a firmly established and regularly followed law in New York, and is therefore "adequate" for the purposes of the procedural default bar. *Kates,* 162 A.D.3d at 1630. For instance, the court cited the decision of the New York Court of Appeals in *People v. Williams*, 51 N.E.3d 528 (N.Y. 2016), in which New York's high court stated that "we enforce the preservation doctrine with equal regularity in the trial and plea contexts, remaining mindful that the necessity of preservation is the rule rather than the exception." *Williams*, 51 N.E.3d at 533. In addition, the appellate division cited the New York Court of Appeals's decision in *People v. Louree*, 869 N.E.2d 18 (N.Y. 2007), which recognized that the preservation doctrine was the "general rule," with exceptions for the "rare case" where a defendant's factual recitation negates an essential element of the crime pleaded to, or fails to advise a defendant of post release supervision. *Louree*, 869 N.E.2d at 21.

However, insofar as the appellate division continued on to a consideration of the merits, it is not clear from the appellate division's decision that the preservation doctrine was an

independent ground of decision. Rather, the appellate division's further discussion of the voluntariness of the plea, and its observation that "the record established that he was advised during the plea proceeding of the direct consequences of his plea," requires this Court to proceed to a merits-based review of Kates's plea argument.

*Review of Kates's Plea Claims on the Merits*

A guilty plea "is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial . . . ." *Brady v. United States*, 397 U.S. 742, 748 (1970). Thus, it constitutes a waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination. *Parke v. Raley*, 506 U.S. 20, 29 (1992) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)). Because it operates as a waiver of important constitutional rights, a guilty plea "is valid only if done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (quoting, *Brady*, 397 U.S. at 748) (internal quotation marks omitted).

According to the Supreme Court, a guilty plea is knowing if the defendant is aware of and understands the rights he is waiving as a consequence of his plea. *McCarthy v. United States*, 394 U.S. 459, 466 (1969) (citation omitted). Second, a guilty plea is voluntary if, after examining the totality of the relevant circumstances, the plea is found to be an "expression of [defendant's] own choice," and was not "induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *Brady*, 397 U.S. at 755. Third, a plea is intelligent if the defendant is in control of his mental faculties (*Brady*, 397 U.S. at 756), has received "real notice of the true nature of the

charge against him . . . ." (*Henderson v. Morgan*, 426 U.S. 637, 645 (1976) (citation omitted)), and "possesses an understanding of the law in relation to the facts" (*McCarthy*, 394 U.S. at 466).

"[T]he court taking a defendant's plea is responsible for ensuring a record adequate for any review that may be later sought . . . ." *Bradshaw*, 545 U.S. at 183 (quoting *Boykin v. Alabama*, 395 U.S. 238, 244 (1969)) (internal quotation marks omitted). "While a [state] trial judge is required to make a record that affirmatively discloses that the defendant's guilty plea is intelligent and voluntary, he or she is not required by federal law to engage in any particular interrogatory 'catechism' akin to that required of federal courts by Federal Rule of Criminal Procedure 11." *Hanson v. Phillips*, 442 F.3d 789, 798–99 (2d Cir. 2006) (citation omitted).

*Application*

After a thorough review of the record – including the transcript of the plea hearing – the Court concludes that Kates's guilty plea was knowing, voluntary, and intelligent, and that his challenges to his plea are without merit.

*The plea was knowing*. First, the transcript of the plea hearing demonstrates that Kates understood the rights that he was waiving with his plea, and thus that the plea was knowing. The trial court informed Kates that pleading guilty "is the same as if you went to trial and you were convicted by unanimous jury," asked Kates whether he understood that "by pleading guilty you're giving up your right to make the [prosecution] prove their case against you beyond a reasonable doubt," and then defined "reasonable doubt" at Kates's request. 04/15/2015 Plea Tr. at 10–11. Kates then affirmed that he understood. 04/15/2015 Plea Tr. at 12. Kates also affirmed that he understood that in giving up his right to trial, he was giving up his rights to be represented by counsel at trial, and to confront the witnesses called against him and cross-examine them. 04/15/2015 Plea Tr. at 15–16.

*The plea was voluntary*. Second, the transcript demonstrates that Kates's plea was voluntary. After Kates initially rejected the government's plea offer, the prosecutor made a record of the offer, indicating that the government was willing to promise Kates a prison sentence of 16 years with a 5 year period of post-release supervision in exchange for a plea of guilty to one count of kidnapping in the second degree. 04/15/2015 Plea Tr. at 4. Kates affirmed to the trial court that he had had time to discuss the offer with his attorney, and did not want to accept the offer. 04/15/2015 Plea Tr. at 5. The trial court then explained that Kates could receive consecutive time on the charges in the indictments if convicted, including a maximum of 25 years to life on the kidnapping charges, and three to seven years on the burglary charge. 04/15/2015 Plea Tr. at 6–7. Kates stated that he had not discussed those possibilities with his attorney, asked for "three more minutes" to talk with counsel, and the court stood in recess. *Id.*

When court resumed, the prosecutor noted that in addition to the promise of a 16 year sentence, "to the extent that [certain property seized from Kates or his residence after his arrest] is not needed for . . . remaining co-defendant, should Mr. Kates plead guilty and to the extent that the requested property is not considered contraband," the prosecution would return the property "as soon as appropriate." 04/15/2015 Plea Tr. at 6–7. Kates then indicated that he wanted to accept the prosecutor's plea offer. 04/15/2015 Plea Tr. at 9. In addition to examining Kates regarding his waiver of his constitutional rights to a jury trial, to counsel, and to confront adverse witnesses in the colloquy that followed, the trial court also asked Kates whether "anybody made any promises . . . to get [him] to take this plea other than the sentence promise that's been placed on the record by the [prosecution] and your attorney?" 04/15/2015 Plea Tr. at 12. Kates responded, "No." *Id.*

In response to a further question about whether anyone had threatened or forced him in

any way to take the plea, Kates responded, "I think so, a little bit." *Id.* Kates went on to explain that he believed that the trial court's denial of his motion to have his case severed from a co-defendant who "looks like they're guilty . . . was at the expense of my defense." 04/15/2015 Plea Tr. at 13. The trial court made clear to Kates that the trial court's decision not to sever was not coercion, and that Kates could appeal the if he went to trial and was unsatisfied with the result. 04/15/2015 Plea Tr. at 14–15. The court then reiterated, "[b]y pleading guilty you're giving up your right to trial. The question now is has anybody forced you or threatened you to take a plea?" 04/15/2015 Plea Tr. at 14. Kates responded, "No, nobody in particular," and indicated that the only issue he had was his disagreement with the trial court's decision on severance. *Id.*

Based on his plea colloquy, Kates now argues that his plea was not voluntary because it was based on an "illusory and meaningless plea" that involved property the prosecutor had to return anyway (Pet. at 24–25), the trial court "coerced him" into making his plea (Pet. at 27–28), the trial court failed to inform him of the direct consequences of his plea (Pet. at 29–30), and that his plea was induced by fraud and duress (Pet. at 34). None of Kates's arguments have merit.

To be sure, the Supreme Court has stated that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). However, here it is not clear that the return of Kates' property was part of the plea agreement, and it certainly was not the most significant benefit. When asked whether anyone had made any promises to him "other than the sentence promise that's been placed on the record by the [prosecution] and [defense] attorney," Kates responded, "No." 04/15/2015 Plea Tr. at 12.

Yet even if the promise to return the property to Kates was part of the plea agreement,

Kates has not shown that it was either unfulfilled or illusory. First, Kates has not shown by clear and convincing evidence that the state appellate division was incorrect in its finding that the trial "court properly determined that documentary proof submitted by defendant conclusively refuted defendant's claim that the plea was involuntary because it was induced by an unfulfilled promise." *Kates*, 162 A.D.3d at 1632–33. *See also* 28 U.S.C. § 2254(e)(1).

Second, Kates has not shown that the prosecutor's promise to return the property was illusory. Assuming, without finding, that the prosecutor's statement was a promise as part of the plea offer, the specific promise was that after Kates's guilty plea, the prosecution would return the property "as soon as appropriate." 04/15/2015 Plea Tr. at 9. Regardless of whether the prosecution would have been legally required to return the property anyway, the commitment to expedite the process of property return following the guilty plea was itself a benefit that Kates received as part of the bargain.

Further, the record demonstrates that the prosecutor made clear the direct consequences of Kates's plea – a promise of 16 years' imprisonment and 5 years post-release supervision– and there is no indication of confusion regarding that offer by either Kates or his counsel. 04/15/2015 Plea Tr. at 4, 5, 7 (including references on the record to the promise of a 16 year sentence by the prosecutor, defense counsel, and the trial court).

Lastly, there is no indication in the record that the trial court coerced Kates in any way. In fact, the trial court adjourned the hearing until later in the afternoon to allow Kates time to discuss the potential plea offer with his counsel (04/15/2015 Plea Tr. at 3), and then gave him more time after examining Kates to ensure he understood the plea he was offered (04/15/2015 Plea Tr. at 7). The trial court also informed Kates both that "I don't have any position one way or another whether you should take [the plea offer] or not," and that "it doesn't affect me, it doesn't matter

to me one way or another what you do." 04/15/2015 Plea Tr. at 6–7. Then, when Kates continued

to insist that the trial court's decision not to sever Kates's trial from his co-defendant "who looks

like they're guilty," the trial court explained that "[i]f you feel you're being coerced into [pleading

guilty] and you're only doing it to avoid something and you're really not guilty of anything, then I

want you to have a trial . . . . you have a right to a fair trial and I'll give you a fair trial." 04/15/2015

Plea Tr. at 13–14.

*The plea was intelligent*. Third, the transcript demonstrates that Kates's plea was

intelligent. The Supreme Court has stated that "[n]ormally the record contains either an

explanation of the charge by the trial judge, or at least a representation by defense counsel that

the nature of the offense has been explained to the accused. Moreover, even without such an

express representation, it may be appropriate to presume that in most cases defense counsel

routinely explain the nature of the offense in sufficient detail to give the accused notice of what

he is being asked to admit." *Henderson*, 426 U.S. at 647.

Here, the prosecutor clarified that the plea would be to one charge of kidnapping in the

second degree, and defense counsel indicated that he "had further discussions with Mr. Kates .

. . about entering a plea to the fourth count in the indictment." 04/15/2015 Plea Tr. at 8. The trial

court then asked Kates, "have you had a chance to speak to [your counsel] about all of this?,"

to which Kates responded, "Yes." 04/15/2015 Plea Tr. at 8. The trial court also verified with Kates

that he understood that he was pleading guilty to a violent felony offense. 04/15/2015 Plea Tr.

at 8. There is nothing in the record to rebut the presumption " that in most cases defense counsel

routinely explain the nature of the offense in sufficient detail to give the accused notice of what

he is being asked to admit." *Henderson*, 426 U.S. at 647.

Accordingly, Kates's claims that his guilty plea was not knowing, voluntary, and intelligent

(grounds 1, 2, 3, 4, 6) must be dismissed.

B. Kates's appeal waiver was knowing, voluntary and intelligent.

Kates identifies a litany of issues to support his claim that his Eighth and Fourteenth Amendment rights were violated when the state courts enforced an invalid and unconstitutional plea appeal waiver that was entered unknowingly, unintelligently, and involuntarily. Pet at 35. None of Kates's arguments have merit.

*Legal Principles*

It is well-settled that under New York law, the right to an initial appeal is provided by statute. *People v. Seaberg*, 541 N.E.2d 1022, 1024 (N.Y. 1989). "[I]n *People v. Seaberg*," the New York State Court of Appeals held that "defendants may validly waive their right to appeal, provided the '[waiver] is fair, free from oppressiveness, and sensitive to the interests of both the accused and the People.'" *People v. Thomas*, 144 N.E.3d 970, 976 (N.Y. 2019). That is, "[a] waiver of the right to appeal is effective" under New York law "[if] the record demonstrates that it was made knowingly, intelligently and voluntarily." *Johnson v. Graham*, No. 17-CV-629-LJV-HKS, 2022 WL 1458616, at *3–4 (W.D.N.Y. May 9, 2022) (quoting *People v. Lopez*, 844 N.E.2d 1145, 1149 (N.Y. 2006)).

However, errors of state law are not reviewable on a habeas petition unless they "'rise for some other reason to the level of a denial of rights protected by the United States Constitution.'" *Wainwright v. Goode*, 464 U.S. 78, 86 (1983). Thus, whether Kates's appellate-waiver claims are cognizable on federal habeas review depends not on whether his appeal waiver was valid under New York state law, but whether the state appellate division's decision to enforce that waiver "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States." *Johnson*, 2022 WL 1458616 at

*4.

*Application*

"There is, of course, no [federal] constitutional right to an appeal." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Further, the record shows that the trial court had an extensive colloquy with Kates regarding his appeal waiver over and above discussions of his plea. Throughout his plea hearing, Kates continued to contest the fairness of the trial court's decision not to sever Kates's trial from his co-defendant. *See, e.g.,* 04/15/2015 Plea Tr. at 14. As a result, the court made clear that it understood Kates's position, but that his acceptance of the plea offer would preclude him from appealing the court's decision on severance. 04/15/2015 Plea Tr. at 15–16, 19. The trial court also recited, twice, Kates's state law appeal rights. 04/15/2015 Plea Tr. at 16–17. Kates responded, "I understand the waiver," affirmed that he had had enough time to discuss the issue with his trial counsel, and then signed a written waiver of appeal. 04/15/2015 Plea Tr. at 17–18. After Kates again complained about the severance decision, the trial court once more gave Kates the opportunity to recant his appeal waiver, but Kates confirmed that he wanted to waive his appeal rights. 04/15/2015 Plea Tr. at 20.

Accordingly, Kates's claims regarding his appeal waiver (ground 8) must be dismissed.

C. Kates's challenges to various pre-trial issues and decisions.

Kates also raises multiple issues from his case that arose prior to his plea, including that he was indicted on false evidence and through prosecutorial misconduct (Pet. at 35), he was arrested without probable cause and the criminal complaint was defective (Pet. at 36), the evidence against him was based on an unconstitutional search and seizure, the trial court failed to summon his co-defendant to a *Wade* hearing (Pet. at 39–40), and the trial court failed to make proper inquiry into his complaints about counsel (Pet. at 34). Kates also argues that he is actually

innocent of the crime for which he was convicted. Pet. at 39. These claims must be dismissed.

*Legal Principles*

In *Tollett v. Henderson*, 411 U.S. 258 (1973), the Supreme Court explained that "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett*, 411 U.S. at 267. As the high court later explained, the basis of this rule is the recognition:

> that when a defendant is convicted pursuant to his guilty plea rather than a trial, the validity of that conviction cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized. State law treats a guilty plea as "a break in the chain of events [that] preceded it in the criminal process" . . . . Therefore, the conclusion that a Fourth Amendment claim ordinarily may not be raised in a habeas proceeding following a plea of guilty does not rest on any notion of waiver, but rests on the simple fact that the claim is irrelevant to the constitutional validity of the conviction.

*Haring v. Prosise*, 462 U.S. 306, 321 (1983) (internal citation omitted).

("A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction, if factual guilt is validly established." *Menna v. New York*, 423 U.S. 61, 62–63, n. 2 (1975). A defendant's sworn statements at his plea hearing "carry a strong presumption of verity," and a court reviewing post-plea claims of innocence or constitutional violations must draw all permissible inferences in favor of the government and against the defendant. *See United States v. Maher*, 108 F.3d 1513, 1530 (2d Cir.1997) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)). "Additionally, the trial judge who addressed the defendant during the course of taking the guilty plea, and who had benefit of observing his demeanor at that time, is in a better position than a federal district court, reviewing a cold record,

to judge the credibility of a belated claim of innocence which contradicts a prior, valid guilty plea." *Ferrer v. Superintendent*, 628 F. Supp. 2d 294, 307 (N.D.N.Y. 2008) (citing *Maher*, 108 F.3d at 1531).

*Application*

Here, Kates's post-plea claims are either inconsistent with the statements that he made under oath at the plea hearing in which he admitted to his crime of conviction, or irrelevant to that crime and his admission. Clearly, Kates's vague argument that he is actually innocent contradicts the solemn admission made under oath. Pet. at 39. In addition, the various claims regarding prosecutorial misconduct, and a defective complaint and indictment, are "antecedent constitutional infirmit[ies]" unrelated to the "nature of [counsel's] advice and the voluntariness of the plea," and are not independent grounds for federal collateral relief. *Byng v. Annucci*, No. 9:18-CV-00994-JKS, 2021 WL 1565189, at *8 (N.D.N.Y. Apr. 21, 2021) (citing *Tollett*, 411 U.S. at 266.)

With respect to the issues Kates raises regarding the state trial court's suppression rulings, the Court acknowledges that NYCPL § 710.70(2) "preserves the defendant's right to challenge an adverse decision on a suppression motion on direct appeal and in a federal habeas corpus petition, notwithstanding the guilty plea. *Eldridge v. Superintendent of Greenhaven Corr. Facility*, No. 19CIV7763ALCSLC, 2022 WL 18542149, at *6 (S.D.N.Y. Feb. 25, 2022), *report and recommendation adopted sub nom. Eldrige v. New York*, No. 19CV7763ALCSLC, 2023 WL 1438726 (S.D.N.Y. Feb. 1, 2023) (citing *Lefkowitz v. Newsome*, 420 U.S. 283, 293 (1975)). Nevertheless, the state appellate division found that Kates's "valid waiver of the right to appeal foreclose[d the court's] review of defendant's challenges . . . to [the trial court]'s adverse suppression ruling." *Kates*, 162 A.D.3d at 1628. "Waiver of the right to appeal an adverse

suppression ruling in state court also waives the opportunity for federal habeas review of that ruling." *Mapp v. Phillip*, No. 04-CV-1889 JG, 2005 WL 1541044, at *5 (E.D.N.Y. June 29, 2005).

Accordingly, Kates's challenge to the state trial court's pre-trial rulings (grounds 5, 7, 9, 10, 11, 13, and 14) must be dismissed.

## D. Kates's ineffective assistance of counsel claims are also without merit.

Kates maintains that he received the ineffective assistance of counsel at both the trial and the appellate level. Specifically, he argues that he received constitutionally deficient representation at the trial level "when his trial counsel failed to investigate potentially exculpatory evidence" (Pet. at 33), and when he negotiated during plea bargaining for the return of property that had to be returned anyway (Supp. Pet. at 3–4). He argues that he received constitutionally deficient representation at the appellate level where counsel failed to attack the appeal waiver, did not properly state facts that would have given the *Catu* error[1] argument the proper substance, used an unrevised set of transcripts for her appeal brief, failed to argue that the trial court violated NYCPL § 400.15–400.21, failed to argue that defense counsel should have challenged Kates's predicate felony conviction on constitutional grounds, and submitted a deficient application for leave to appeal to the New York Court of Appeals. Pet. at 40. None of these arguments have merit.

*Legal Principles*

The Sixth Amendment guarantees a criminal defendant the right to the "reasonably effective assistance" of counsel. To establish ineffective assistance of counsel, a defendant must

---

[1] "In 2005, in *People v. Catu*, [the New York Court of Appeals] held that a defendant who pleads guilty must be informed of the direct consequences of his plea, including the imposition of PRS, in order to knowingly, voluntarily and intelligently plead guilty, and that the failure to notify defendant of the term of PRS during the plea colloquy required that the plea be vacated (825 N.E.2d 1081 ([N.Y.] 2005)." *People v. Estremera*, 88 N.E.3d 1185, 1186 (N.Y. 2017).

satisfy the two-prong test outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" under the "prevailing professional norms." *Vadas v. U.S.*, 527 F.3d 16, 20 (2d Cir. 2007) (citing *Strickland*, 466 U.S. at 688). Second, the defendant must demonstrate he was prejudiced by the ineffective conduct. *Strickland*, 466 U.S. at 687–88. A defendant's failure to satisfy one prong of this two-pronged test relieves the court of any requirement to consider the other prong. *Strouse v. Leonardo*, 928 F.2d 548, 556 (2d Cir. 1991).

A claim for ineffective assistance of appellate counsel is evaluated upon the same standard as is a claim of ineffective assistance of trial counsel. *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.1994) (citation omitted). "A petitioner alleging ineffective assistance of appellate counsel must prove both that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and that absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful." *Garfield v. Poole*, 421 F. Supp.2d 608, 613–14 (W.D.N.Y. 2006) (citing, *inter alia*, *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001)). Appellate counsel is not required to raise all non-frivolous arguments, hence it is not sufficient to demonstrate that counsel omitted a non-frivolous argument. *Mayo*, 13 F.3d at 533. Rather, failure to raise an argument on appeal constitutes ineffective assistance only when the omitted issue is "clearly stronger" and more significant than those presented. *Id.* (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).

*Application*

As it pertains to Kates's trial counsel, the state appellate division stated that "[w]here, as here, a defendant contends that he or she was denied the right to effective assistance of counsel guaranteed by both the Federal and New York State Constitutions, we evaluate the claim using

the state standard, which affords greater protection than its federal counterpart . . . ." *Kates*, 162 A.D.3d at 1630 (citations and internal quotation marks omitted). The state standard provides that so long as the circumstances reveal that the attorney has provided meaningful representation, which in the plea context means the defendant has received an advantageous plea and the record does not cast doubt on counsel's effectiveness, then the constitutional requirement has been met. *Kates*, 162 A.D.3d at 1631. After a review of the record, and Kates's counseled papers and *pro se* briefs, the appellate division concluded that Kates had received meaningful representation. The court noted that trial counsel, "among other things, successfully sought suppression of significant evidence against defendant and negotiated an advantageous plea bargain," and that – based on the record and Kates's papers – Kates's claim that his counsel failed to investigate potentially exculpatory evidence was "mere disagreement [over] the investigation strategy . . . ." *Kates*, 162 A.D.3d at 1632.

According the state appellate division due deference under 28 U.S.C. § 2254, the Court finds that Kates has failed to demonstrate that the state appellate division's findings were either contrary to, or involved an unreasonable application of, clearly established federal law. "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances . . . . [and] the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington*, 466 U.S. 668, 688–89 (1984). Here, Kates's counsel filed numerous pre-trial motions in this case, secured the dismissal of the first kidnapping in the first degree charge against Kates (02/24/2015 Tr. at 9), suppression of evidence with respect to the search and tracking of Kates's care (*Id.*), and a favorable plea agreement. There is nothing in the record – other than Kates's complaints, reiterated in his

habeas petition, that his counsel did not pursue investigations that Kates believed to be potentially exculpatory – that would suggest trial counsel fell below an objective standard of reasonableness. *See, e.g.,* 02/24/2015 Tr. at 9 (with the trial court telling Kates that "at this point [Kates's trial counsel has] done more for you than most defense attorneys that I have seen working in other cases."). This includes the argument raised in Kates's supplemental petition regarding trial counsel's negotiation for the return of property that had to be returned anyway. Supp. Pet. at 3-4. At the very least, counsel's exchange with the prosecutor conferred a benefit in that it expedited the process of property return, but more to the point, it is clear from the record that the primary focus of counsel's efforts was on reducing Kates's exposure at sentencing and achieving a far lower sentence than he might have received had the case gone to trial.

With respect to Kates's arguments regarding appellate counsel, the Court has reviewed both counsel's brief to the appellate division, as well as Kates's *coram nobis* motion to the appellate division and supporting materials. Based on that review, the Court finds that Kates has failed to demonstrate that appellate counsel's performance was constitutionally deficient. As indicated above, appellate counsel is not required to pursue every possible non-frivolous argument, but rather to make strategic decisions to present the strongest ones. *Mayo*, 13 F.2d at 533. Here, Kates's counsel's brief presents four well-reasoned, well-supported arguments that elicited a thorough, relatively lengthy decision from the appellate division. *See, e.g.,* SR1 at 460–99.

Accordingly, Kates's arguments regarding the ineffectiveness of counsel (grounds 4, 14, 15, and 17) are denied.

E. The Court can not consider the constitutionality of Kates's 2011 conviction.

Kates maintains that his 2011 conviction, which served as the predicate felony for his sentence enhancement was "constitutionally infirm." Pet. at 38–39. This Court has already held,

in a case opened for a separate habeas petition that Kates filed regarding the 2011 conviction, that the rule set forth in the Supreme Court's ruling in *Lackawanna County Dist. Attorney v. Coss*, 532 U.S. 394 (2001) barred Kates's claims because he was no longer "in custody" for the conviction. *Kates v. New York State*, No. 20-CV-6593 (CJS), 2021 WL 1720824, at *4 (W.D.N.Y. Apr. 30, 2021), *reconsideration denied*, No. 20-CV-6593 (CJS), 2021 WL 4519801 (W.D.N.Y. Oct. 4, 2021), *appeal dismissed sub nom. Kates v. New York*, No. 21-1257, 2022 WL 1043970 (2d Cir. Jan. 13, 2022), *cert. denied*, 142 S. Ct. 2692, 212 L. Ed. 2d 772 (2022). Accordingly, Kates's claim in this regard (ground 12) must be dismissed.

F. Kates's argument that appellate and trial court rulings on his appeals and collateral attacks did not violate his Eighth and Fourteenth Amendment rights.

Kates maintains that his Eighth and Fourteenth Amendment rights were violated because his appeals and collateral attacks in state court "were not resolved in a way reasona[bly] related to the merit of those motions, challenges, or appeals." Pet. at 40–41. For the reasons stated throughout this decision and order, the Court finds no error in the decisions at issue that would be cognizable on federal habeas review. Accordingly, that claim (ground 16) is dismissed.

CONCLUSION

Based on the foregoing, it is hereby ORDERED that Petitioner Alexander Kates's application for habeas relief [ECF No. 1] is denied. Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Kates has not made a substantial showing of the denial of a constitutional right. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Any requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the

Federal Rules of Appellate Procedure. The Clerk of the Court is hereby ordered to close this case.

      SO ORDERED.

Dated:      August 22, 2023
                Rochester, New York

           ENTER:

           CHARLES J. SIRAGUSA
           United States District Judge